

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS SALAMEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 4372 |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| SEARS HOLDING MANAGEMENT | ) | |
| CORPORTION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Sears Holding Corporation's ("Sears") motion for summary judgment against Plaintiff Nicholas Salameh ("Plaintiff"). Salameh filed a single-count complaint against Sears, his former employer, alleging that the company terminated him in retaliation for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Sears' primary argument in support of summary judgment is that Plaintiff's supervisors made the decision to terminate Plaintiff before they knew of his medical leave, thus precluding a claim for retaliation. In response, Plaintiff maintains that despite Sears' contention, the circumstantial evidence shows that his request for FMLA leave was the motivating factor in his supervisor's decision to terminate his employment. For the following reasons, the motion is granted.

## I. BACKGROUND

### A. FACTS

The following facts are undisputed. Plaintiff began working for Sears on June 1, 1999. In or around June 2005, Sears assigned Plaintiff to work in the company's Home Services unit as

a Program Manager. In that position, he reported directly to the Manager of Program Managers, Pat Casey ("Casey"), and later to the Manager of Portfolio Management, Jeff Kizilbash ("Kizilbash"). Casey and Kizilbash reported directly to Division Vice President of Continuous Improvement, Norman Buchanan ("Buchanan"), who oversaw Plaintiff's business unit and ultimately made the decision to terminate Plaintiff. Buchanan reported up the chain to the Vice President of Operations and Administration, Joan Trach ("Trach"). All of these individuals, including Plaintiff, worked at Sears' corporate campus in Hoffman Estates, Illinois.

There is no dispute that Plaintiff was a competent employee. Every year company supervisors evaluated each employee in several categories and assigned them a performance score that ranged from one to five. A five was the highest score an employee could receive, while a one was the lowest. Also, in each category, supervisors wrote comments that documented the employee's effectiveness, performance and areas for improvement. Plaintiff often received above-average marks on these performance reviews. In 2006 Plaintiff received an overall performance rating of 3.4 out of 5. On his 2007 year-end review, Plaintiff received an overall performance rating of 3.0. Aside from his scores, Plaintiff's supervisors often praised him in the written remarks that accompanied his evaluations, but also expressed the need for him to improve in certain areas. For instance, on the 2007 year-end review, in a section titled, "Overall Summary Comments," Plaintiff's supervisor at the time, Pat Casey, wrote:

> [Plaintiff] has had a good year managing several difficult projects. My overall rating of 3 is based on his need to expand his project management skills, communication skills, leadership skills and issue resolution skills. By improving these areas with high innate personal drive and dedication, he can continue to improve the value he brings to the PMO.

Def.'s 56.1 Statement, Ex. 6 at 6. This comment is largely representative of the many positive appraisals that Plaintiff's supervisors typically gave him, either in his performance evaluations, or in e-mails and other communications regarding his work performance.

At the end of 2007 Plaintiff began to experience anxiety attacks, which continued over the next few months. In March 2008 Plaintiff discussed his medical problems with Kizilbash, his current supervisor, explaining that he had a hard time giving a presentation at a prior conference because of his illness. By April 2008 Plaintiff lost the majority of his hair.

In early 2008 Sears announced a job vacancy for a Program Manager position. At the same time, however, despite the job opening, Sears implemented a cost savings program that included a reduction of its workforce. This reduction affected several business units, including Home Services. In late April 2008 the Vice President of Operations, Trach, directed the Division Vice President, Buchanan, to provide her with a cost reduction proposal for his business area. Within a few days, Buchanan suggested to Trach that the company should eliminate 13 of 60 employees in his area, including one Program Manager. Buchanan did not decide at this point which Program Manager would be terminated.

Rather, to make that decision Buchanan sought the advice of Sears' Director of Human Resources, Pamela Balistee ("Balistee"), whose job requires her to provide counsel to managers in the event they decide to terminate an employee. Based on Buchanan's decision to terminate a Program Manager, Balistee pulled the files for the Program Managers that Buchanan oversaw and recommended that he terminate the employee with the lowest 2007 year-end performance review score. According to her testimony, no other factors went into her suggestion; she merely suggested that Buchanan look for the lowest score. As it turned out, Plaintiff's 3.0 overall performance rating for 2007 was the lowest score out of all the Program Managers in his

3

business unit. The evidence shows that the other Program Managers in Plaintiff's division had the following scores: Deepak Verma, 3.1; Michael Coon, 3.2; Imran Lakhwera, 3.3; Lorinda Hansen, 3.3; Christina Depasquale, 3.3; and Wesley Cunningham, 3.7. On May 6, 2008 Buchanan sent Trach a list of employees that he decided to terminate using Balistee's method. That list included Plaintiff.

On May 7, 2008 Buchanan informed Kizilbash that he planned to terminate Plaintiff. Meanwhile, that same day, Plaintiff approached Leslie Kromar ("Kromar"), the company's Human Resource Manager for the Home Services unit, and requested paperwork regarding medical leave. Kromar had no idea of Buchanan's decision to terminate Plaintiff, and thus unaware she processed Plaintiff's request for leave and had no reason to inform Buchanan or Trach. She routinely notified Rachel Player ("Player") at Sears' Associate Service Center in Tucker, Georgia, who was responsible for processing and approving all leave of absence requests, including medical leave under the FMLA. Player, like Kromar, had no idea of Buchanan's decision to terminate Plaintiff.

Kromar was the first Sears employee to learn of Plaintiff's medical leave request. And though she corroborates speaking with Plaintiff on May 7, 2008, Plaintiff says that he approached Kromar about his request in either late March 2008 or early April 2008. Regardless, it is undisputed that Kromar never approached Buchanan or Trach regarding Plaintiff's leave request and that Kromar did not have any input in the decision to terminate Plaintiff's employment.

On May 14, 2008 Player, having no knowledge of Buchanan's decision to terminate Plaintiff's position, sent to Plaintiff the appropriate FMLA leave request forms. Two days later, on May 16, 2008 Plaintiff faxed to Player his completed application. On May 19, 2008 Plaintiff

4

for the first time informed his direct supervisor, Kizilbash, that he had requested medical leave, thus causing a flurry of internal communications, as the news of Plaintiff's request spread throughout the various departments.

First, Kizilbash informed Buchanan, who testified that this was the first time he learned of Plaintiff's leave request. From there, Kizilbash and Buchanan informed Balistee, who also testified that this was the first time she had heard of Plaintiff's request. Finally, Buchanan informed Trach, who gave similar testimony. On May 20, 2008, Balistee spoke directly to Kromar, who explained to Balistee that she had notified Sears' Associate Service Center about Plaintiff's leave request, but did not say whether his leave had been approved. Balistee then informed Kromar that Plaintiff was going to be terminated. That same day, on May 20, 2008 Kizilbash sent Plaintiff an e-mail inquiring when Plaintiff would begin his medical leave. Plaintiff responded that he planned to work through May 23, 2008. Sears terminated Plaintiff on May 22, 2008, one day prior to his medical leave.

## B. PROCEDURAL HISTORY

Plaintiff initiated this case on August 1, 2008, alleging that Sears violated the FMLA when it terminated him in retaliation for his request to take medical leave. He seeks statutory damages for lost wages and benefits, liquidated damages, any equitable relief that the Court deems proper as well as fees and costs associated with this action. At the close of discovery, Sears filed its motion for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(c). In deciding whether genuine issues of material fact exist, the reviewing court construes all facts and draws all reasonable inferences in favor of the non-moving party. See Fed. R. Civ. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chi., 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See U.S v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In contesting a motion for summary judgment, the nonmoving party cannot rest on the pleadings alone; it must instead identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show that a genuine issue of material fact exists. See Vukadinovich v. Bd. of Sch. Tr.'s of N. Newton Sch., 278 F.3d 693, 699 (7th Cir. 2002). The mere existence of some alleged factual dispute, or some perceived metaphysical doubt as to the material facts, will not defeat an otherwise properly supported motion for summary judgment, as speculation will not suffice. Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); see also Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001); Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). It follows, then, that "conclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990)). Finally, in deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## B. RETALIATION UNDER THE FMLA

The FMLA allows an eligible employee suffering from a serious health condition to take an unpaid leave of absence for a period of up to twelve work weeks during a twelve month period. 29 U.S.C. § 2612(a)(1)(D). After the period of qualified leave expires, and the employee returns to work, he or she is entitled to be reinstated to his or her former position or an equivalent position with the same benefits. 29 U.S.C. § 2614(a). The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any FMLA rights, 29 U.S.C. § 2615(a)(1), and prohibits an employer from retaliating against an employee who exercises his or her FMLA rights. 29 U.S.C. § 2615(a)(2). Under these provisions, the FMLA certainly contemplates Plaintiff's one theory of recovery in this case – retaliation. To establish his claim, or at least his prima facie case in support of his claim, Plaintiff can proceed under either the direct or indirect methods of proof. Long v. Teachers' Ret. Sys. of Ill., 585 F.3d 344, 349 (7th Cir. 2009) (citing Ridings v. Riverside Med. Ctr., 537 F.3d 755, 771 (7th Cir. 2008)). In this case, Plaintiff chose to proceed under both.

A plaintiff can surpass summary judgment on an FMLA retaliation claim either by submitting direct or circumstantial evidence of his employer's discriminatory intent (the direct method)[1], or by establishing that he was treated less favorably than other similarly situated employees who did not request FMLA leave, even though he was performing his job satisfactorily (the indirect method)[2]. Lewis v. Sch. Dist. # 70, 523 F.3d 730, 741 (7th Cir. 2008) (listing elements); Burnett v. LFW, Inc., 472 F.3d 471, 477 (7th Cir. 2006); Daugherty v.

---

[1] Under the direct method, an employee must demonstrate: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by his employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action. Tomanovich v. City of Ind., 457 F.3d 656, 662-63 (7th Cir. 2006).

[2] Under the indirect method, a plaintiff must prove: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Stone v. City of Ind. Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002)

Wabash Ctr., Inc., 572 F. Supp. 2d 1003, 1011 (N.D. Ind. 2008). As is usually the case, the two common elements under both the direct and indirect methods are undisputed. Plaintiff's request for FMLA leave constitutes a statutorily protected activity, and his termination certainly qualifies as a materially adverse action. Burks v. Wis. Dep't of Transp., 464 F.3d 744, 759 (7th Cir. 2006) (classifying termination as an adverse action). As a result, the Court need only determine whether Plaintiff has presented enough evidence to create an issue of fact as to the remaining elements, which we note above, under either the direct or indirect methods of proof. The Court shall discuss each of them in turn.

### 1. Direct Evidence of Retaliation

Plaintiff first proceeds under the direct method of proof, which requires him to show a causal connection between his request for FMLA leave and his termination. Argyropoulos v. City of Alton, 539 F.3d 724, 733 (7th Cir. 2008). The focus here is on Sears' intent. To show causation, Plaintiff must present evidence that Sears terminated his employment on account of his FMLA leave. Breneisen v. Motorola, Inc., 512 F.3d 972, 979 (7th Cir. 2008); Kohls v. Beverly Enters. Wis. Inc., 259 F.3d 799, 805 (7th Cir. 2001) (holding that to establish a violation of the FMLA, employee must prove that employer would not have discharged her had she not taken FMLA leave). Plaintiff need not prove that retaliation was the *only* reason for his termination, but "that the protected conduct was a substantial or motivating factor in [Sears'] decision." Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005). In this context we ask: What motivated Sears to terminate Plaintiff? If Plaintiff can point to either direct evidence, such as an admission, or circumstantial evidence from which a factfinder can infer discriminatory intent, then typically the causation element is satisfied. Argyropoulos, 539 F.3d at 733-34; Lewis, 523 F.3d at 742; Gates v. Caterpillar, Inc., 513 F.3d 680, 686 (7th Cir. 2008). All the

while the Court must keep in mind that for an employment decision to be deemed retaliatory, the decisionmaker must have had actual knowledge of the protected conduct. Tomanovich, 457 F.3d at 668. It follows, then, that for causation to exist, an employee must demonstrate that his employer would not have taken the adverse employment action but for the employee's protected activity. See Johnson v. City of Fort Wayne, 91 F.3d 922, 939 (7th Cir. 1996).

Sears maintains that it did not retaliate against Plaintiff because his supervisor, Buchanan, made the decision to terminate Plaintiff several days prior to having any knowledge of Plaintiff's leave request. In other words, Sears insists that it could not have violated the FMLA as a matter of law because the company made its adverse employment decision before it learned that Plaintiff engaged in protected activity. This realization, says Sears, precludes the Court from finding that a causal connection exists between Sears' decision to terminate Plaintiff and Plaintiff's request to take FMLA leave.

Plaintiff concedes that there is no direct evidence of Sears' retaliatory motive, and thus he attempts to satisfy the causation element using three pieces of circumstantial evidence. Specifically, he cites: the timing of his termination; his positive employment history; and Sears' sudden dissatisfaction with his performance, which came immediately after he requested FMLA leave, he says. The most prominent piece of evidence that Plaintiff cites is the fact that Sears terminated his employment precisely one day prior to his approved FMLA leave. Although such temporal proximity is rarely enough by itself to create an issue of fact, the timing of events "is often an important evidentiary ally of the plaintiff." Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001); Stone, 281 F.3d at 644. Here, it's one of Plaintiff's only allies, thus we turn its sufficiency first.

Initially, there is no dispute that Sears made the decision to terminate Plaintiff several days before Buchanan had any knowledge of Plaintiff's leave request. In fact, the evidence shows that Buchanan's decision had nothing to do with Plaintiff's leave, as it remains undisputed that Buchanan based his decision on Plaintiff's 2007 year-end performance score and nothing else. Sears waited to implement this non-discriminatory decision until one day prior to the start of Plaintiff's FMLA leave. And when they implemented the decision, Buchanan and others knew that Plaintiff's leave was about to begin, thus creating a unique situation in which Sears made a non-discriminatory decision, but acquired knowledge of Plaintiff's protected activity before it was implemented. In light of the timing of his termination, Plaintiff became suspicious.

But Plaintiff's suspicion, on its own, is not enough to survive a motion for summary judgment. See Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004). Causation in these cases, as we stated above, necessarily turns on the employer's animus when making a decision to terminate an employee. Here, it is undisputed that Sears made its decision to terminate Plaintiff irrespective of his medical leave. In responding to this, Plaintiff failed to identify any affirmative evidence to suggest that Sears viewed his FMLA leave negatively, discouraged him from taking leave or made it difficult for him to seek leave. In the end, there is nothing from which a reasonable juror could draw an inference that Sears made its decision to terminate Plaintiff because of his leave. See Burks, 464 F.3d at 758-59 ("[S]uspicious timing alone . . . does not support a reasonable inference of retaliation" because the "mere fact that one event preceded another does not prove that the first event caused the second."); Buie v. Quad/Graphics, Inc., 366 F.3d 496, 506 (7th Cir. 2004) ("[A] temporal sequence analysis is not a magical formula which results in finding of a discriminatory cause."); see also Ferguson v. Lander Co., Inc., No. 3:06 CV 0328, 2008 WL 921032, at *20 (N.D.N.Y. Apr. 2, 2008) (finding

no retaliation when the decision to terminate, pursuant to a reduction in force, was made in advance of the employee's leave request).

What Sears could or should have done as to the time it chose to implement the decision is not the issue. Courts cannot impose on employers their own ideas of what constitutes a prudent business decision; they merely assess whether an employer has engaged in conduct for a forbidden reason. E.g., Argyropoulos, 539 F.3d at 736 (noting that the court does not sit as a "super personnel review board" that second-guesses an employer's facially legitimate business decisions); Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 2000). Plaintiff has not presented other circumstantial evidence that, when taken together, supports the inference of a causal link. Instead, to substantiate Sears' intent, Plaintiff points to his prior positive employment history and a purported sudden dissatisfaction with his work. Neither is sufficient.

Despite Plaintiff's contention, the evidence does not suggest that Sears ever became dissatisfied with Plaintiff's work. In fact, just the opposite is true, as there is no dispute that Plaintiff consistently received positive comments and satisfactory performance ratings on his mid-year and year-end reviews. Moreover, the record reflects that Pat Casey completed Plaintiff's 2007 year-end review without having any knowledge that Plaintiff requested medical leave. In the end, there is nothing to support the notion that Casey had a hidden agenda when he gave Plaintiff a marginally lower score than his peers. At this point, Plaintiff's case is built on sheer speculation.

In the two cases that Plaintiff relies upon, Lang and King, the employees submitted not only evidence of temporal proximity, but also other evidence that bolstered the existence of a causal link. For example, in Lang, immediately after the plaintiff filed a complaint for

discrimination, his employer issued frequent written criticisms of his work, submitted to his supervisors what proved to be baseless attendance violations and enforced department policies against him in an unreasonable manner. Lang, 361 F.3d at 420. In King, the employee produced an affidavit in which she testified that, one week before she was terminated, her employer's human resources manager informed her that several doctor's slips were missing from her personnel file and, without those slips, the company would not allow her to return to work. 166 F.3d at 894. Then, the human resources manager never told plaintiff which slips were missing and failed to return her phone calls. Id. This case presents an entirely different scenario. See M. Cristia v. Red Door Spa Holdings, No. 07 C 601, 2008 WL 4367297, at *8 (N.D. Ill. Mar. 18, 2008) (distinguishing King and finding no retaliation based on timing alone).

Here, Plaintiff was selected for termination before his supervisor had any knowledge of his FMLA leave. And there is no other evidence that a reasonable juror could consider beyond the timing of Plaintiff's termination. If the Court were to allow Plaintiff's claim to go forward, despite the minimal evidence he's presented, such a ruling would penalize Sears for making a ministerial choice to implement a non-discriminatory decision that the company formulated before any protected activity took place. This is not the conduct that the FMLA is designed to prevent. If that were the case, employers would be forced to set aside reasonable business decisions in fear of being sued under the FMLA. Whether Plaintiff caught wind of the decision made but not yet formally implemented and took self-help action has not been argued by counsel. In such a case, however, arguably the employer would indeed be stuck with this employee until, in its estimation, the fear of litigation dissipates. See Thomas v. Fairfield Mfg. Co., No. 08 C 96, 2009 WL 5031333, at *8 (N.D. Ind. Dec. 15, 2009) (citing Cracco v. Vitran Exp., Inc., 559 F.3d 625, 634 (7th Cir. 2009) (proposing that a termination based on

"performance problems discovered while employee was on leave cannot be sufficient to establish causation, otherwise the employer would be forced to employ a substandard employee after the FMLA leave concludes or risk facing liability")). Under the principles set forth above, the FMLA does not apply to this type of situation. The FMLA is a shield to prevent an employer from acting pursuant to a prohibited animus, it is not a sword with which employees can disrupt their employer's non-actionable decisions. Accordingly, the Court finds that Plaintiff's retaliation claim fails under the direct method. See Atchison v. Sears, No. 08 C 3257, 2009 WL 3210063, at *8-9 (E.D.Pa. Oct. 7, 2009) ("[B]ecause Sears's decision to end [plaintiff's] employment was made prior to his application for FMLA leave . . . , he cannot establish a causal connection to make out a prima facie case of retaliation."); Williams v. Bd. of Educ., No. 07 C 6997 , 2009 WL 140124, at *5 (N.D. Ill. Jan. 21, 2009) ("Since defendants made their decision not to renew plaintiff's employment before she made her FMLA request, she cannot establish an FMLA claim under a retaliation theory."); Ahmarani v. Sieling & Jones, Inc., 211 F. Supp. 2d 658, 661 (D. Md. 2002) (finding timing argument "unpersuasive because the present record contains strong evidence that defendants had decided to fire [employee] prior to his request for FMLA leave"); Vargas v. Globetrotters Eng. Corp., 4 F. Supp. 2d 780, 783 (N.D. Ill. 1998) (finding no retaliation, as employee had no right to reinstatement because her position had been eliminated irrespective of her FMLA leave); Carrillo v. Nat'l Counsel of the Churches of Jesus Christ, 976 F. Supp. 254, 256 (S.D.N.Y. 1997) (finding no violation of FMLA because decision to terminate employee was made before leave was taken); but see Champion v. Spencer Gifts, LLC, No. 08 C 689, 2009 WL 3131461, at *6-7 (D.N.J. Sept. 24, 2009) (finding causation established where decision to terminate was made before employee announced his intent to take FMLA leave, but not implemented until during the employee's leave).

### 2. *Indirect Evidence of Retaliation*

Plaintiff also proceeds under the indirect method to show retaliation, which, as we stated previously, requires him to show: (1) that he performed his job satisfactorily; and (2) that he was treated less favorably than some similarly situated employee. Argyropoulos, 539 F.3d at 733 (citing Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 785 (7th Cir. 2007)). If Plaintiff succeeds in this endeavor, the burden shifts to Sears to articulate a legitimate non-discriminatory reason for its decision to terminate Plaintiff. Timmons v. G.M. Corp., 469 F.3d 1122, 1125 (7th Cir. 2006). If it does, then the burden shifts back to Plaintiff to show that there is a genuine issue of material fact that the proffered reason for the employment action is pretextual. See id. at 1126. To show pretext, Plaintiff must demonstrate that Sears' explanation is unworthy of credence or that, in reality, some other discriminatory reason motivated the company. Debs v. Northeastern Ill. Univ., 153 F.3d 390, 395 (7th Cir. 1998). Pretext is not a mere mistake, or bad decision; it means "a lie, specifically a phony reason for some action." Russell v. Acme Evans Co., 51 F.3d 64, 68 (7th Cir. 1995).

In this case, there is no dispute that Plaintiff performed his job satisfactorily, thus there is no issue with respect to the first element above. Sears argues nevertheless that Plaintiff failed to establish his prima facie case because he cannot show that he was treated less favorably than another similarly situated employee. In response, Plaintiff asserts, in cursory fashion, that he was the only program manager out of seven that Sears ultimately terminated. He then says that sometime, "in the past," another unidentified employee requested medical leave and was terminated. This argument is plainly insufficient.

"The similarly situated inquiry is a flexible, common-sense comparison based on 'substantial similarity' rather than a strict 'one-to-one mapping between employees,' but still

requires 'enough common features between the individuals to allow [for] a meaningful comparison." Argyropoulos, 539 F.3d at 735 (citing Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007)). A meaningful comparison is one that eliminates "confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable" – the protected activity. Humphries, 474 F.3d at 405. A prima facie case requires the plaintiff to show he is similarly situated with respect to performance, qualification and conduct, and that he engaged in similar conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. Snipes v. Ill. Dep't of Corr., 291 F.3d 460, 463 (7th Cir. 2002).

For a meaningful comparison in this case, Plaintiff would have to show that he was treated less favorably than another employee, who did not request FMLA leave, that Sears decided to terminate based on his or her 2007 performance review. Tomanovich, 457 F.3d at 663 (noting that a claim under the indirect method would require a plaintiff to show that he was treated less favorably than similarly situated employees who did not engage in protected activity). Such an employee doesn't exist. In fact, Plaintiff does not point to another program manager, or any employee for that matter, that Sears decided to terminate based on the employee's 2007 year-end review. Not only that, but Plaintiff does not point to any comparator with whom the Court can draw a meaningful comparison, except to say that at some unstated time Sears terminated another employee after he or she requested leave. But, as Defendant points out, such an individual is not outside Plaintiff's protected class. He or she is simply another person that Sears treated similarly, which is not the sort of individual that the indirect method was designed to expose. See id. (looking for an employee that did *not* engage in protected activity). Plaintiff has thus failed to identify any similarly situated employee that was

treated more favorably than himself; as such, he is unable to establish a prima facie case under the indirect method.

Nevertheless, even if Plaintiff established his prima facie case, Sears has presented a non-discriminatory reason for Plaintiff's termination, which remains undisputed. Sears explained that prior to the time that Plaintiff sought FMLA leave, the company had instituted a cost reduction program that involved a reduction in the company's workforce. Pursuant to this program, Plaintiff's supervisor, Buchanan, sought assistance from Sears' human resource manager in determining which Program Manger would be terminated. Balistee suggested that Buchanan terminate the Program Manager with the lowest 2007 performance evaluation score, which happened to be Plaintiff. Her testimony shows that no other factors affected or played a role in that decision. In the end, Buchanan followed Balistee's suggestion and decided to terminate Plaintiff, without ever having knowledge of Plaintiff's FMLA leave request. With that, the burden shifts to Plaintiff to establish that Sears' explanation is a mere pretext for discrimination.

To establish pretext, Plaintiff argues that although Sears instituted a reduction in workforce, the company had open positions available in Plaintiff's division in early 2008 and some time after May 2008, which, Plaintiff says, casts doubt on Sears' excuse that he was fired pursuant to the cost reduction program. This evidence begs the following question: If Sears was reducing its costs, and terminating Program Managers, why then would the company have a job opening for a Program Manager position? At first glance, this inconsistency seems to undermine Sears' explanation. But Plaintiff fails, however, to demonstrate that Sears' reduction in force, and Plaintiff's termination, are altogether unworthy of credence, which our pretext standards require. Despite the job openings in Plaintiff's department, the evidence makes it entirely clear

that Plaintiff was terminated at a point when the company was not hiring any Program Managers. And, there is no evidence that Sears ever attempted to or did fill the open positions. In fact, one of the open positions that Plaintiff cites in support of his argument existed one year after he was terminated. There is nothing that connects this opening to Plaintiff's termination, and thus Plaintiff has failed to prove the requisite "deceit used to cover one's tracks," the foundation for a claim of pretext. Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001).

To the extent Plaintiff is attempting to show pretext by reference to his "excellent work performance," that argument is immaterial. The documents, deposition testimony and verified statements in this case show that Plaintiff was not terminated because of lackluster performance. He performed just fine, and Sears does not dispute that fact. Plaintiff was selected for termination based on his 2007 evaluation score, relative to his peers. As it turned out, Plaintiff had the lowest score. Nothing else went into Sears' decision; thus whether he was an excellent performer is of no consequence.

Although the record shows a unique set of circumstances surrounding Plaintiff's leave, none of his evidence undercuts the legitimacy of Sears' cost reduction initiative and the reduction in force that accompanied that initiative. The undisputed facts show that the decision to terminate Plaintiff's employment was made without knowledge and irrespective of his FMLA leave request. The record, therefore, does not contain sufficient evidence that creates a genuine issue of material fact about the legitimacy of Plaintiff's termination. The Court finds that Plaintiff failed to establish retaliation under the indirect method, and thus summary judgment is warranted in favor of Sears.

## III. CONCLUSION

For the reasons stated above, Defendant Sears Holding Corporation's motion for summary judgment against Plaintiff Nicholas Salameh is granted.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: _1-13-10_